Turn to the day calendar for this morning. The first case is Bruzzese v. Sessions. Ready to go? Go right ahead. Good morning, your honors. May it please the court. Howard Sakai on behalf of the appellant, Adam Bruzzese. We ask this court to vacate the judgment and reverse the decision of the district court, granting summary judgment and dismissing Mr. Bruzzese's employment discrimination claim against ATF on the basis of a perceived mental disability. Your honors, we're here today because Mr. Bruzzese was involved in a traumatic incident in the line of duty for which ATF deemed him a hero. And because his emotional reactions to that trauma and his ability to cope with that trauma did not meet his supervisor's subjective expectations and norms about post-traumatic stress and mental health. Look, I work with an individual on a daily basis. I supervise this individual. I know him. I've known him for a period of time. I don't think he has a mental illness. I'm not necessarily qualified to judge that. I don't think he's disabled, but I have very serious questions about his judgment and about his ability to carry a firearm. I don't think this guy should be walking around the streets with a gun. The consequences are too great. I'm taking the gun away from him. What's wrong with that? Your honor, in this case, Mr. Bruzzese for nine years was an exceptional and safe agent. No doubt about that. And what happened... We're talking about future behavior. But the future behavior and the assessment of his ability to be a safe agent must rely on a reasonable medical judgment. I work with him on a daily... I know this man. I work with him. There's something about him that is disturbing. I don't think he ought to carry a gun. Well, I think the very fact that someone finds something, including a layman, especially a layman who doesn't understand fully, is not a doctor, when they begin articulating concerns... But he's a police officer. He's a police superintendent. He knows better than anyone else the catastrophic consequences for both the force and its reputation if there is an improper shoot. Your honor, no one questions... Particularly in this day and time. Your honor, no one questions that safety in law enforcement is absolutely paramount. The Supreme Court in Arlington in 1987 instructed that whenever a law enforcement agency, in particular any employer, invokes safety concerns, including as to law enforcement agents, that are derived from a concern about an actual or perceived disability, we must undertake that... We must ensure that the employer's proffer of safety concerns are legitimate, are not derived from preconceived, stereotypical misperceptions, but are instead that they reflect a legitimate safety concern. Go ahead and finish. I apologize. That they rise to the requisite level of safety, because at the same time we must ensure that the articulation of safety is not derived from misperception or stereotypical fear. Well, you just mentioned a perception of disability. His supervisor had him examined, did he not? Did he not? He did. And the information that the supervisor got back was that he was not disabled. He didn't suffer from a mental disability, but that he had a narcissistic personality, and that the recommendation was that based on his personality alone, that the psychologist felt that he should not, the clinician felt that he should not carry a weapon, didn't it? Respectfully, not exactly. What happened was after the evaluation came back, the special agent in charge, Ronald Turk, the deciding, ultimate deciding official, based his decision on two grounds. One, the fitness for duty evaluation, and concluding that he had personality traits or the constituent traits of the disorder. Right. In those, but no one classified them as a disability. The, well, they didn't. Well, excuse me. The clinician did not render an opinion that he was mentally disabled. They rendered that he did not have a mental disorder that adversely affected his ability to be a safe agent. They could not rule a disorder out. In addition, the discussion of personality traits necessarily and practically are part of the discussion of a personality disorder. In addition. But he didn't make a diagnosis of a personality disorder that fit within some definition accepted by his profession, did he? Well, the personality disorder. Did he? No, that's a simple question. Did he make a diagnosis that he fit within some kind of recognized disability identified with a personality disorder? The evaluators concluded that they could not rule out a recognized disability. Okay. Now let me ask you a question. A doctor examines someone and says, well, he's not disabled, but he has a bad temper. Could a supervisor decide to make a decision as to whether someone carries a firearm because they have a bad temper? Could they do that? It wouldn't violate the statute, would it? If only a bad temper and if the agency follows their protocol for addressing a bad temper through their protocols, that's one thing. Here that wasn't the case. Well, but you first have to have either a perception or an actual disability, right? And you know that you don't have an identified disability because you have no medical conclusion with regard to disability. So you're the one who used the word perceived, not me. And I presume and your brief argues that it was the supervisor perceived a disability, correct? But he had not been given any kind of diagnosis that there was a disability, but the clinician himself had said, hmm, this guy's personality makes me nervous about him returning to service with a weapon, right? Two things, Your Honor. They could not rule out the recognized disability. Okay. In addition, Mr. Turk re-invoked the original concerns for mental impairment that had led to the psychiatric referral in the first place and re-invoked all the original concerns from Mr. Emesberger about the presumption of post-traumatic stress after that. It wasn't just Emesberger, though, right? Even Dr. Ahmad, who's the psychiatrist here, says in his last two paragraphs, he's got no clear mental health condition, but because of his documented alarming behavior, arming him could be restricted. This is to follow up on Judge Parker's question. What are the supervisors supposed to do when the two psychologists and the psychiatrists say, well, we really can't give him an Axis I or II diagnosis, but I wouldn't trust this guy with a weapon? What are you supposed to do if you're a supervisor in ATF, say, well, we don't want to discriminate against him because he's regarded as having a disability that he doesn't have, but we're going to send him back out there? What does the supervisor do? If the supervisor has those concerns, then it has to undertake its very comprehensive administrative and disciplinary process to address the behaviors. And he's armed and on the street while all this bureaucratic process is winding its way through? No, at this point, Mr. Brasisi had been on restricted duty. There was a process of six months in which he was undergoing the evaluation. Mr. Terp could have implemented the process that addresses the behavior. There's a disciplinary process. If his performance had fallen subpar, they could have removed him. They have to substantiate those behaviors. But tomorrow he's going out with a gun, and I've got these reports saying that's not he shouldn't be armed on the street. What separates this from all the other cases we see is in these employment-related cases, the tradeoffs are between the employer and the employee. The employer's right to run an operation and the employee's right to a job and not be the subject of discrimination. Here, the dispositive factor, it seems to me, is it's the public consideration. And why should not that be paramount here? Your Honor, I think that my time is up. May I answer? Go ahead. Sure. Your Honor, the Supreme Court in Orleans in 1987, and then Congress codified the standard, mandated that whenever there's a concern for safety, and this would be for any context. It's not any context. That's where you are wrong. He is one of the few people in this society who is privileged to use daily force. We're not talking about a truck driver. We're not talking about a machine operator. We're talking about one of the few people in this society who can use daily force. That is true, Your Honor. Those considerations are paramount. They will absolutely be taken into consideration by the reasonable medical judgment that's necessitated by the poses a direct threat standard that's codified by Congress. That will ensure safety on the one hand, but also prevent discrimination on the other. So now my time is up. Thank you. Thank you very much. A couple minutes reserved. Thank you. Mr. Cho. Good morning, Your Honor. My name is James Cho. I'm an assistant United States attorney with the Eastern District of New York, here on behalf of the Attorney General of the United States of America. This is a case where plaintiff's employer, ATF, lost confidence in plaintiff's ability to safely perform his job as a law enforcement officer. ATF lost confidence because plaintiff engaged in questionable conduct and exhibited poor judgment in the workplace. As a result, ATF took away his gun and reassigned him to a non-law enforcement position. Here, the district court proudly granted summary judgment before the employer because plaintiff could not establish that ATF discriminated against him based on a perceived disability when it reassigned him to a non-law enforcement position. But this man had, at the summary judgment stage, an affidavit from a psychiatrist traversing the reports that ATF had accumulated. Why doesn't that create an issue of fact? Well, the reports prepared by plaintiff's expert was done after the fact, reviewing the fitness review evaluation report that was conducted here. Again. So was the psychiatric examination. That's correct. The expert evaluation that Mr. Evers is commissioned. Right, but at the same time, even their own expert made findings regarding the plaintiff. Their own expert said, quote, the plaintiff may display an undiplomatic style of interacting with his supervisors in the workplace. So even plaintiff's own expert came to the same conclusions as the fitness review evaluation. But you agree that none of the experts said he was disabled. They all said he is not disabled within a mental or emotional condition. That's correct. But why did they restrict his duties? Didn't they regard him as disabled? They did not. They interviewed Mr. Bruzzese themselves. They conducted a battery of tests as well. And based on their interaction with Mr. Bruzzese himself, concluded that his judgment was questionable, that there were a series of events in this case that caused these evaluators to question his suitability for the job. But your opponent points out that if they had said that he was disabled, you would have had to deal with him differently, wouldn't you? That's correct. So this is kind of a damned if he does and damned if he doesn't. He may be abrasive or, quote, undiplomatic with his supervisors, but because the evaluation referred to him as having a narcissistic personality, as opposed to making it a hard and fast diagnosis, it gives the supervisor greater discretion with regard to his ability to carry a weapon, as opposed to then, had he been found to have been talking to Jesus on a regular basis, then he would have gotten help working back towards being a regular line agent. But because he just was undiplomatic with his supervisor, he loses his opportunity to participate in the profession that he's performed for nine years admirably. That seems kind of inconsistent, doesn't it? Well, this is a different case. Mr. Bruzzese is a law enforcement officer who carries a gun. Right. And, as Judge Parker noted, has the authority to use deadly force in the line of his work. And in this case, Mr. Bruzzese had a series of events that caused his supervisors to question his behavior. So Ron Turk, who made a decision to reassign him permanently and to disarm him, looked at the totality of factors. And that includes the fatal incident he was involved in, right? That's correct. For which there was an investigation by ATF, DOJ, cleared him of any wrongdoing, gave him a medal, and then made him a firearm instructor for a year and a half before this other conduct. But they all talk about this event. He must have done something. He must have PTSD. But didn't they just bring that in as part of this kind of friction he had with his supervisor on a couple of occasions? It wasn't just the fatal shooting that resulted in the reassignment. It was, again, the totality of circumstances. There were events before the shooting, and there were questionable events after the shooting. Before the shooting? Yes. He was made a firearms instructor after the shooting and given a medal. Right. Again, there were events after the shooting as well. For example, his supervisor observed him acting hyper in the workplace. After an operation, he disregarded an instruction from his supervisor to obtain an arrest warrant. And he also made suicidal comments, which were reported by two separate agents that Mr. Brzezinski worked with. Again, Ron Turk, out of an abundance of caution, looked at the totality of circumstances in reaching his decision to resign Mr. Brzezinski permanently. Let me ask you another question. The district court didn't mention the 2008 amendments to the ADA about the regarding as method of discriminating. Was that an oversight or unimportant? It's irrelevant as to this case. That amendment took out the language that a perceived disability needs to suggest that an employee is substantially limited from performance of major life functions. That was not necessary for the court to address in this case. Based on the totality of circumstances, the decision-maker, in this case Ron Turk, decided that out of an abundance of caution, again, it was unsafe for an agent to carry a gun who had questionable conduct in the past. But didn't the court say he was also unqualified in its decision? Wouldn't that be relevant to that aspect of the analysis? The term, a qualified individual with a disability, is a term of art used in the ADA context. And Judge Weinstein, in this case, determined that based on these series of events, including the fitness review evaluation, that he was not qualified for the position as an ATF agent anymore. The fact is, though, is that if there's no disability and or no perception of disability, whether he's qualified or not isn't relevant, right? That's correct. Because it's up to the supervisor to decide whether he carries a firearm or not, as long as he's not using some suspect that's been identified as a suspect classification by the statute. That's correct. And based on the totality of circumstances, it was questionable as to whether Mr. Brzezinski had the proper judgment and was able to exercise sound discretion in performing his job as an ATF officer. For all these reasons, the court should affirm the district court's decision, granting certain judgment from the government. Thank you. Mr. Cho, Mr. Sakai, you've got a couple more minutes. Thank you, Your Honor. The district court didn't mention the 2008 amendment. Is that irrelevant? It is absolutely ‑‑ I'm sorry, it is not irrelevant. It is very relevant. The reason is, it is now that legislation was passed to broaden the ability for plaintiffs, perceived as plaintiffs, to satisfy the regarded as prong, because employers don't have to show to what extent it limits their major life activities or really any activities whatsoever. So simply naming any broad mental, emotional instability is now going to be easier to use to satisfy the regarded as prong. That's why Congress passed it, not to lessen it. There's no claim in this case for retaliation or anything of that sort, right? There's no ‑‑ as I looked through the record, I didn't see any history of bad blood between your client and Reed or Emsburg. You're not making any kind of retaliation claim? No, Your Honor. I think it is significant to point to that Mr. Brasisi was never found unfit for duty. The evaluators all admitted this. ATF also never lost confidence in his ability to be a safe officer and never did. They did. They took his gun away. But if we look at his performance evaluations year after year, he's getting exceptional scores in judgment, decision‑making, self‑control, safety, all of the features that make up a safe and reliable agent. But the game changer was the report. If you're the supervisor, as Judge Droney asked you, and this report hits your desk and you read it, how can you possibly responsibly let this guy remain on the street, you know, armed? Because at that point ‑‑ Your Honor, I see my time is up. I can conclude. Because at that point, the ATF supervisor has an obligation to do two things. He's going to ensure safety but also make sure he's not acting on discriminatory fears. He's going to go through its own process to address the behaviors. So he's going to substantiate a removal if he could substantiate it. Otherwise, in this case, they never effectuated removal. They took him out of the position without effectuating the removal process, which is mandated by the Civil Service Reform Act. There's absolutely no way to take him out of that position without substantiating the concerns, whether it's safety concerns. But do you have some sort of due process complaint ‑‑ claim in your complaint? No, not specifically, but just that fact that they circumvented the Civil Service Reform Act. But you're not complaining about that. There's no claim to that effect in your complaint. We are to the extent that ‑‑ Am I correct? We are to the extent that it underlies, it displays ‑‑ What number claim raises a due process? No, we're not alleging a due process claim. We're claiming that the circumvention of the process displays the pretext for discrimination because they did not use their process to do what they could have done if they had a legitimate nondiscriminatory basis. I've already asked the presider if I could ask this. What's your very best piece of evidence that creates an issue of fact about that his supervisors had a perception of his disability? They started with the perception of posttraumatic stress. The evaluation came back, and Sattrick said in addition to the evaluation, I am re-invoking all of the original concerns for post ‑‑ for mental impairment, which began with the prompt for a psychiatric referral in the first place and began with the posttraumatic stress. Do you think that, at least in your view, that should create an issue of fact as to the perception so that you ought to be able to have that go before a jury? We think that absolutely creates a genuine issue of matter of fact in addition to the fitness for duty evaluation independently of both grounds. Thank you very much. Thank you, Your Honors. Thank you. We'll reserve a decision on this case and turn to ‑‑